**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Paul Solomon, Sr., | No. CV-18-00306-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Thomas Paul Solomon, Sr. ("Solomon") seeks review under 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security ("Commissioner"), which denied his application for disability benefits and supplemental security income. For the following reasons, the Court finds that the administrative law judge's ("ALJ") decision was based on reversible legal error and remands for further proceedings.

Solomon is a 66-year-old male who previously worked as a civil engineer. This is Solomon's second application for disability benefits. His first application, which alleged a disability onset date in August 2009, was denied by written decision on October 19, 2011 (A.R. 105-120) and became the Commissioner's final decision. In February 2012, Solomon filed a second application for disability benefits (A.R. 327-338), which gives rise to this case. Solomon alleges he became disabled in October 2011. The claim was denied initially on October 9, 2012 (A.R. 121) and again upon reconsideration on June 25, 2013 (A.R. 134). Solomon then filed a written request for hearing on July 20, 2013. (A.R. 212-

213.) On February 26, 2014, he appeared and testified at a hearing at which an impartial vocational expert also appeared and testified. (A.R. 47-82.) On May 28, 2014, the ALJ issued a decision concluding that Solomon was not disabled within the meaning of the Social Security Act. (A.R. 174-193.) Solomon requested the Appeals Council review the decision, and on February 5, 2015, the Appeals Council granted his request and remanded the case to the ALJ. (A.R. 194-197.) The ALJ conducted a new hearing on July 7, 2016 (A.R. 83-104) and issued a decision again determining that Solomon wasn't disabled (A.R. 18-46). Solomon requested review of the ALJ's decision, but the Appeals Council denied review on December 4, 2017. (A.R. 1-7.) At that point, the ALJ's decision became the Commissioner's final decision.

## LEGAL STANDARD

The Court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). The Court should uphold the ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* Put another way, "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court should uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation," but the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and internal quotation marks omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (citations and internal quotation marks omitted). The Court must "look at the record as a whole to determine

whether the error alters the outcome of the case." *Id.* Importantly, however, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ. *Id.* at 1121.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, which addresses whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

**BACKGROUND**

At step one, the ALJ determined that Solomon met the insured status requirements of the Social Security Act through December 31, 2015 and had not engaged in substantial gainful activity since October 20, 2011. (A.R. 25.) At step two, the ALJ found that Solomon had the following severe impairments: lumbar and cervical degenerative disc disease, status post right hip replacement, and bilateral shoulder degenerative joint disease with right shoulder surgery. (*Id.*) The ALJ acknowledged the record also contained

evidence of status post pulmonary embolism and deep venous thrombosis, status post hernia repair, status post left knee surgery, possible irritable bowel syndrome, anxiety, and depression, but found these were not severe impairments. (A.R 25-27.) At step three, the ALJ determined that Solomon didn't have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (A.R. 27-28.) At step four, the ALJ determined that Solomon had the RFC to perform sedentary work, except that he is limited to occasionally overhead reaching bilaterally, occasionally climbing ramps and stairs, and occasionally balancing, stooping, crouching, kneeling, and crawling. (A.R. 28-35.) Further, the ALJ determined Solomon can never climb ladders, ropes, or scaffolds. (*Id.*) The ALJ found Solomon wasn't capable of performing his past relevant work, but that Solomon had obtained skills from his past work that were transferable to the occupation of project estimator. (A.R. 35-36.) The ALJ concluded Solomon would need to make "very little, if any, vocational adjustment," such that, at most, he would have a one- to three-month adjustment period. (*Id.*)

This Social Security appeal is unusual in that Solomon doesn't challenge the ALJ's rejection of his symptom testimony or the ALJ's decision to assign "little weight" to the opinion of his treating physician.[1] Instead, he argues the ALJ erred by (1) improperly concluding that "very little, if any, vocational adjustment" would be required for him to perform the job of project estimator and (2) failing to include his mental limitations in the RFC or the hypothetical question posed to the vocational expert. (Doc. 16.)

As explained below, the Court disagrees with Solomon as to the first issue but agrees as to the second.

---

[1] During the administrative proceedings, Solomon testified that his back, hip, and shoulder impairments left him in extreme pain and caused him to use a walker 90% of the time. (A.R. 29.) Solomon also presented evidence that his treating physician believed he was "incapable of even low stress work" due to these impairments. (A.R. 33-34.) The ALJ rejected this testimony and opinion evidence, noting that Solomon repeatedly went mountain biking and that such activity "belies his allegations of disabling pain and limitations." (A.R. 33. *See also* A.R. 34 [concluding that treating physician's opinion "would render the claimant bedridden" and was "incongruent with the claimant's ability to ride a mountain bike"].)

**DISCUSSION**

I. <u>Whether The ALJ Committed Reversible Error By Concluding That "Very Little, If Any, Vocational Adjustment" Would Be Required</u>

A. **The ALJ's Decision**

The ALJ determined that Solomon is limited to sedentary work and cannot perform his past relevant work as a civil engineer. (A.R. 28, 35.) However, the ALJ found that Solomon had acquired the following skills from his work as a civil engineer: project explanation skills, pricing skills, coordination of materials, and reviewing of bids and contracts. (A.R. 35.) The ALJ determined that these skills were transferable to other occupations existing in significant numbers in the national economy and that Solomon would need to make "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry" to perform the occupation of "project estimator." (A.R. 35-36.) The ALJ noted the vocational expert testified that Solomon's adjustment period would be "1-3 months, at best." (A.R. 36.)

B. **Legal Standard**

A claimant has transferable skills "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs." *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1986) (quoting 20 C.F.R. § 404.1568(d)(1)). "A finding of transferability is most probable among jobs that involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a similarity of services or products." *Id.* (citing 20 C.F.R. § 404.1568(d)(2)). However, "[c]omplete similarity of skills . . . is not necessary." *Id.* (citing 20 C.F.R. § 404.1568(d)(3)).

At the time of the ALJ's decision, Solomon was over 55 years old, rendering him "of advanced age" under the Social Security regulations. 20 C.F.R. § 404.1563(e). The Social Security regulations provide that, when a claimant is of advanced age and has "a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little,

if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.* § 404.1568(d)(4). The Ninth Circuit has further elaborated that, to satisfy the "very little, if any" standard, the skills at issue must be "directly transferable." *Renner*, 786 F.2d at 1424.

C. **Analysis**

Solomon's first argument is that because the Materials, Productions, Subject Matter, and Services ("MPSMS") codes for the jobs of project estimator and civil engineer are different in "the basic materials processed, the final products made, the subject matter or data dealt with or applied, and the services rendered," he would require significant vocational adjustment to perform the occupation of project estimator. (Doc. 16 at 10.) This argument is unavailing. Solomon doesn't identify any case law to support his MPSMS-related argument and multiple courts have rejected it. *See, e.g., Cherwink v. Comm'r of Soc. Sec.*, 2018 WL 1050194, *6 (N.D. Cal. 2018) ("Plaintiff does not cite any legal authority for his arguments regarding the MPSMS and the Department of Labor handbook. The only cases the Court has been able to identify considering these issues have routinely rejected Plaintiff's arguments."); *Russell v. Berryhill*, 2017 WL 4472630, *11 (N.D. Cal. 2017) ("[T]he only cases the Court has identified on this issue have universally rejected Plaintiff's argument."); *Hartley v. Colvin*, 2014 WL 6058652, *6 (E.D. Cal. 2014) ("[P]laintiff's contention that the vocational expert must rely on matching work fields and MPSMS codes when analyzing transferability is unsupported by any legal authority."); *Garcia v. Astrue*, 2012 WL 4091847, *7 (E.D. Cal. 2012) ("Plaintiff provides no legal authority to support his contention that the VE must rely on the MPSMS . . . .").

Solomon's next argument is that the description of each occupation in the Dictionary of Occupational Titles ("DOT") indicates that more than very little vocational adjustment would be necessary. (*Id.* at 12-13.) This argument also lacks merit. The ALJ's transferability determination was supported by the vocational expert's testimony, which is itself substantial evidence sufficient to uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (finding vocational expert's testimony was substantial

evidence on which the ALJ could rely); *Johnson v. Colvin*, 31 F. Supp. 3d 1262, 1272-73 (E.D. Wash. 2014) (same); *Ball v. Astrue*, 2010 WL 3420166, *13 (D. Or. 2010) ("The [vocational expert's] testimony provided the ALJ with substantial evidence of the skill level required in plaintiff's past relevant work and the particular skills acquired by his past relevant work activities."). The Court further notes that the DOT descriptions for the jobs of project estimator and civil engineer contain several similarities. For example, and as the vocational expert testified, both occupations involve pricing skills. *Compare Estimator*, DOT 169.267-038, *available at* 1991 WL 647453 ("Computes cost factors and prepares estimates used for management purposes"), *with Civil Engineer*, DOT 005.061-014, *available at* 1991 WL 646239 ("Calculates cost and determines feasibility of project"). Additionally, a project estimator "[a]nalyzes blueprints, specifications, proposals, and other documentation to prepare time, cost, and labor estimates," *Estimator*, DOT 169.267-038, *available at* 1991 WL 647453, and a civil engineer "[p]repares or directs preparation and modification of reports, specifications, plans, construction schedules, environmental impact studies, and designs for project," *Civil Engineer*, DOT 005.061-014, *available at* 1991 WL 646239. Moreover, "civil engineer" has a specific vocational preparation ("SVP") Level of 8, whereas "project estimator" only has an SVP Level of 7, meaning that the project estimator occupation requires a lesser degree of skill. DOT, Appendix C, *available at* 1991 WL 688702 (establishing 9 levels of SVP, each higher SVP level corresponding with greater degree of skill).

Solomon's final argument is that the vocational expert's concession that it would take "one to three months" for him to adjust to the job of project estimator necessarily shows that the job would require more than "very little, if any" adjustment. (Doc. 16 at 13-14.) Solomon further argues that, at a minimum, the ALJ was required under *Renner* to explain with specificity how a one- to three-month adjustment period could qualify as "very little, if any" adjustment. (Doc. 18 at 2-3.)

These arguments are unpersuasive. The "very little, if any" adjustment requirement is a qualitative description of how much adjustment a claimant of advanced age may be

required to endure, not a requirement that the adjustment must be completed within some particular period of days. *Cf. Reynolds v. Heckler*, 570 F. Supp. 1064, 1069 (D. Ariz. 1983) ("The regulation mentions no time frame . . . ."). Here, the vocational expert testified that Solomon's transition from civil engineer to project estimator would be "very brief" and involve "[n]o issue" concerning "transferability skills." (A.R. 102.) That testimony provided substantial evidence in support of the ALJ's conclusion that the "very little, if any" adjustment standard, which the ALJ correctly identified in the order (A.R. 36), was satisfied. Courts have regularly upheld ALJ determinations that "very little, if any, vocational adjustment" was needed where the vocational expert testified to the same, even if the adjustment period was more than 30 days. *See, e.g., Tyree v. Berryhill*, 2018 WL 1056396, *7-8 (E.D. Va. 2018) (ALJ's decision that claimant had transferable work skills that would allow him to serve as a cashier was supported by substantial evidence where "training would likely take no more than thirty to ninety days"); *Dalrymple v. Comm'r of Soc. Sec.*, 2017 WL 9360886, *12 (M.D. Fla. 2017) (ALJ didn't err by determining that "very little, if any, vocational adjustment" was required where vocational expert testified that claimant "should be comfortable doing these jobs within one week and with all new material within six months"); *Vignola v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 1989 WL 46180, *4 (E.D. Pa. 1989) (determining that sixty-year-old claimant had "readily transferrable skills" where "claimant would require only about 60 days of vocational adjustment.").

II. <u>Whether The ALJ Improperly Omitted Mental Limitations In The RFC And In The Hypothetical To The Vocational Expert</u>

**A. The ALJ's Decision**

At Step 2—where the ALJ determines whether a claimant's medically determinable impairments are severe—the ALJ found that Solomon's mental impairments were non-severe. (A.R. 26-27.) The ALJ assessed the mental impairments pursuant to the psychiatric review technique ("PRT") as required by the regulations. 20 C.F.R. § 404.1520a; *id.* 416.920a. The ALJ assessed each of the four broad areas required by the PRT—she determined Solomon had (1) no limitation in activities of daily living; (2) mild

limitation in social functioning; (3) mild limitation in concentration, persistence, and pace; and (4) no episodes of decompensation. (A.R. 26-27.)

At Step 4—where the ALJ assesses a claimant's RFC—the ALJ determined Solomon is limited to sedentary work. (A.R. 28.) The ALJ also found Solomon had other physical limitations. However, the RFC didn't incorporate any of the non-severe mental limitations that had been identified during Step 2. Nor did the ALJ discuss with any particularity Solomon's mental limitations, only briefly noting two medical opinions regarding mental health and giving them "substantial weight"—one in which a psychological evaluator opined that Solomon's "limitations are due primarily to physical and not mental problems," and another in which a state agency psychological consultant diagnosed Solomon with "a non-severe mental impairment of affective disorder." (A.R. 34.)

At Step 5—where the ALJ determines if a claimant can perform any work beside his past relevant work—the ALJ decided Solomon could perform the occupation of project estimator. (A.R. 35-36.) This conclusion was based on the vocational expert's testimony—specifically, the vocational expert's response to a hypothetical posed by the ALJ that included only physical, not mental, limitations. (A.R. 101-102.)

B. **Analysis**

Solomon argues the ALJ erred by acknowledging that he suffers from mild limitations in his social functioning, concentration, persistence, and pace, but failing to include those limitations in the RFC or the hypothetical question posed to the vocational expert. (A.R. 14-16.) In response, the Commissioner argues that "an ALJ is not required to include mild mental limitations in the claimant's [RFC] assessment or in the ALJ's hypothetical's to the VE, when the limitations do not significantly interfere with the performance of a claimant's work activities." (Doc. 17 at 5-6.) In support of this argument, the Commissioner cites, among other cases, *Ball v. Colvin*, 2015 WL 2345652 (C.D. Cal. 2015), and *Medlock v. Colvin*, 2016 WL 6137399 (D. Or. 2016).

The Court agrees with Solomon. Although the ALJ determined Solomon had

mental limitations that caused mild limitation in social functioning and concentration, persistence, and pace (A.R. 26-27), the ALJ's order provides no indication that the ALJ considered those limitations when calculating Solomon's RFC during Step 4. This was error. *See, e.g., Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) ("In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe.") (citing 20 C.F.R. § 404.1545(a)(2)); *Dela Cruz v. Colvin*, 2014 WL 2865076, *2-3 (C.D. Cal. 2014) (remanding because ALJ didn't assess all of claimant's medically determinable impairments in the RFC analysis); *Winter-Duncan v. Astrue*, 2012 WL 1641891, *4 (W.D. Wash. 2012) (same).

The ALJ also erred by omitting the mental limitations from the hypothetical posed to the vocational expert. When formulating such hypotheticals, "an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). Thus, having determined that Solomon had "mild limitation" in social functioning, concentration, persistence, and pace, the ALJ was required to include those limitations in the hypothetical to the vocational expert. *Hutton v. Astrue*, 491 Fed. App'x 850, 851 (9th Cir. 2012) (holding the ALJ erred "in failing to include Hutton's post-traumatic stress disorder . . . in his hypotheticals to the vocational expert at Step Five," after finding it caused Hutton "'mild' limitations in the area of concentration, persistence, or pace"); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011) ("[T]he ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert."); *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996) (reversing ALJ's decision because ALJ didn't include PRT findings in hypothetical to vocational expert).

These omissions were particularly notable because the ALJ ultimately determined that Solomon could perform the occupation of project estimator, which has an SVP of 7 and is thus "skilled work." *Estimator*, DOT 169.267-038, *available at* 1991 WL 647453; SSR 00-4P, *3, *available at* 2000 WL 1898704 ("[S]killed work corresponds to an SVP of 5-9 in the DOT.") The project estimator occupation requires a "General Learning Ability" of Level 2, which is described as requiring a "High Degree of Aptitude Ability," belonging to the "Highest 1/3 Excluding Top 10%." It also requires a Reasoning Level 4 (the ability to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists") and Math Level 4 (the ability to "[d]eal with system of real numbers; linear, quadratic, rational, exponential, logarithmic, angle and circular functions, and inverse functions; related algebraic solution of equations and inequalities; limits and continuity; and probability and statistical inference"). *Estimator*, DOT 169.267-038, *available at* 1991 WL 647453. Consequently, it seems possible that Solomon's limitations in concentration, persistence, and pace could prevent him from performing the occupation of project estimator.

Finally, the Commissioner's reliance on *Ball* and *Medlock* is misplaced. In *Ball*, the court noted that "the record shows that the ALJ *did* consider Plaintiff's mild mental limitations in formulating her RFC." 2015 WL 2345652 at *3 (emphasis added). Similarly, in *Medlock*, the court noted that, "[u]nlike the ALJ in *Hutton*, the ALJ in this case thoroughly considered the medical evidence related to Plaintiff's mild medical impairment at step four before choosing not to include the limitations in the RFC determination." 2016 WL 6137399 at *5. Here, in contrast, the record is silent on this key issue—the ALJ's opinion does not explain why Solomon's mental impairments were omitted from the RFC and hypotheticals.[2]

---

[2] Solomon also argues the ALJ erred by identifying only one occupation he could perform. (Doc. 16 at 16 n.7.) This argument lacks merit. Identifying one occupation, existing in nationally significant numbers, is generally sufficient to satisfy the ALJ's burden. 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in *one or more* occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.") (emphasis added); *Tamayo v. Colvin*, 2013 WL 5651420, *2 (C.D. Cal. 2013) (gathering

III. Scope of Remand

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). This applies particularly "[i]f additional proceedings can remedy defects in the original administrative proceeding." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (citation omitted). But there is an exception to this rule, known as the "credit-as-true" rule, under which the court may remand with instructions to calculate and award benefits. For this rule to apply, a three-part test must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Here, the credit-as-true rule isn't satisfied. Accounting for Solomon's mild mental limitations won't necessarily compel a finding that Solomon is disabled. Further administrative proceedings would be useful in determining whether those limitations should be incorporated into Solomon's RFC and whether Solomon can perform the occupation of project estimator with those limitations.

The Court recognizes the hardship and frustration Solomon must be experiencing with these proceedings. Solomon applied for disability benefits in 2012, more than 7 years ago. He is now 66 years old, past retirement age. However, remand for a computation of benefits isn't appropriate unless the record proves the claimant is disabled. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Therefore, despite the regrettable length of these proceedings, the Court must remand for further proceedings.

…

…

---

cases and noting only one exception not applicable here).

Accordingly, **IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated**, and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 26th day of March, 2019.

_____
Dominic W. Lanza
United States District Judge