**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Paul Solomon, Sr., | No. CV-18-00306-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On July 29, 2021, the Court denied without prejudice Plaintiff's counsel's ("Counsel") motion for award of attorneys' fees under 42 U.S.C. § 406(b), noting that "the Notice of Award provided by the [Social Security Administration ('SSA')]" that Counsel attached to his motion as proof of the amount of past-due benefits did not actually "indicate the amount of past-due benefits . . . , making it impossible to verify that the award sought does not exceed 25% of this amount." (Doc. 29 at 2.) The Court initially ordered Counsel to submit "additional evidence establishing the amount of past-due benefits" or, alternatively, "a declaration setting forth the steps taken to obtain verification paperwork from the SSA." (*Id.*) The Court added that "[i]f and when Counsel submits the required additional evidence, the Court will proceed to analyze the reasonableness of the requested award." (*Id.*)

On July 31, 2021, Counsel informed the Court that Counsel and his staff had "made over 20 phone calls to SSA's Payment Center and expended more than six hours of uncompensated time attempting to communicate with the Payment Center," and that after

finally reaching "a human being," Counsel "was able to confirm that SSA has not issued a Notice of Award and that the Agency has refused [Counsel's] requests to issue one." (Doc. 30 at 1-2.)

On August 3, 2021, the Court issued an order stating that "[t]he SSA is responsible for informing Plaintiff and his attorney as to this amount of past-due benefits, for the obvious reason that Plaintiff has a right to know how much money he is owed, and also because Counsel cannot seek § 406(b) fees until this information is received," and added that "[t]he SSA's failure to do so—especially after repeated requests to do so—is frustrating and inexplicable." (Doc. 31 at 2.) The Court ordered the Commissioner to "file a Notice of Award that includes (1) the date when Plaintiff's award went into effect, (2) the total amount of past-due benefits as of the date when the award went into effect, and (3) a chart breaking down the periods of time in which the benefits accrued." (*Id.* at 3.)

On August 16, 2021, the Commissioner filed a document dated June 27, 2020, which appeared to contain inaccuracies and, at any rate, was not responsive to the Court's order. (Doc. 32-1.)

On August 17, 2021, the Court noted that the document filed the previous day was inadequate and further noted that the Commissioner had seven remaining days to comply with the August 3, 2021 order or face potential sanctions. (Doc. 34.)

On August 20, 2021, the Commissioner filed a response, attaching a declaration from employee Chantrice Lyons, who declared that "the Notice of Award will not be available in letter format in time to meet the Court's deadline of August 24, 2021" due to the SSA's mysteriously slow technology. (Doc. 35-1 ¶¶ 4-5.) The Commissioner attached a "screen shot" of the Notice of Award in digital format. (Doc. 35-2.)

The "screen shot" contains the information ordered by the Court, and therefore the Court's August 3, 2021 order is satisfied. Furthermore, the digital Notice of Award affirmatively states that the past due benefits for the months of April 2012 through May 2020 amount to $155,168. (Doc. 35-2 at 9.) It took a lot of prodding to get this information out of the SSA, but the Court is finally satisfied that Counsel's requested § 406(b) fees—

$38,792.00—do not exceed 25% of Plaintiff's past-due benefits.

The Court will therefore proceed to analyze the reasonableness of the requested award.[1] Section 406(b) "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002); *see also Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009) ("Because the SSA has no direct interest in how much of the award goes to counsel and how much to the disabled person, the district court has an affirmative duty to assure that the reasonableness of the fee is established."). As noted in the July 29, 2021 order, this determination does not equate to use of the lodestar method. *Crawford*, 586 F.3d at 1149 ("The lodestar method under-compensates attorneys for the risk they assume in representing SSDI claimants and ordinarily produces remarkably smaller fees than would be produced by starting with the contingent-fee agreement. A district court's use of the lodestar to determine a reasonable fee thus ultimately works to the disadvantage of SSDI claimants who need counsel to recover any past-due benefits at all."). "[A] district court charged with determining a reasonable fee award under § 406(b)(1)(A) must respect 'the primacy of lawful attorney-client fee agreements,' 'looking first to the contingent-fee agreement, then testing it for reasonableness.'" *Id.* at 1148 (quoting *Gisbrecht*, 535 U.S. at 793, 808.) The Court must determine whether it is appropriate to reduce Counsel's recovery from the contingency fee "based on the character of the representation and the results the representative achieved" by assessing, for example, whether Counsel is "responsible for delay" or whether "the benefits are large in comparison to the amount of time counsel spent on the case." *Gisbrecht*, 535 U.S. at 808. "[R]eviewing court should disallow windfalls for lawyers." *Id.* (internal quotation marks omitted). "The attorney bears the burden of establishing that the fee sought is reasonable." *Crawford*, 586 F.3d at 1148.

---

[1] There is no motion pending at this time—the Court denied without prejudice Counsel's motion for § 406(b) attorneys' fees (Doc. 29), and no subsequent motion for fees has been filed because the Court previously indicated that it would "proceed to analyze the reasonableness of the requested award" after evidence regarding the amount of the past-due benefits was provided. Despite the lack of pending motion, this matter is ripe for resolution.

Here, there is no need to reduce the fee award due to "substandard performance" or "dilatory conduct." *Id.* at 1151. The Court's sole concern is that "the benefits are large in comparison to the amount of time counsel spent on the case." *Gisbrecht*, 535 U.S. at 808.

Counsel submitted a summary of the attorney hours spent litigating this case, totaling 38.6 hours. Some of the time included in this summary, however, is not compensable. Time billed for clerical tasks should not be included in the award because such tasks should be subsumed in firm overhead rather than billed. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). This is true regardless of who does the clerical work— a legal assistant, paralegal, or attorney. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (non-legal work "is not enhanced just because a lawyer does it."); *Neil v. Comm'r Soc. Sec. Admin.*, 495 Fed. App'x. 845, 847 (9th Cir. 2012) (affirming a reduction of fees for "purely clerical tasks such as filing documents and preparing and serving summons" performed by an attorney); *McAnally v. Saul*, 2019 WL 6179217, *2 (D. Alaska 2019) (deducting time billed by an attorney for clerical tasks); *Brandt v. Astrue*, 2009 WL 1727472, *4 (D. Or. 2009) (same); *Gough v. Apfel*, 133 F. Supp. 2d 878, 881 (W.D. Va. 2001) ("Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as EAJA attorney fees.").

Counsel billed 2.2 hours for activities described as "[p]rep FDC file for closure and prep EAJA docs, tickle" on June 18, 2019, but closing the file and "tickling" (calendaring a reminder to check the case again) are administrative tasks that can't be billed, and the EAJA motion is pure boilerplate that likely took no more than a few minutes to paste together. This time is not compensable.

The 0.5 billed on February 2, 2018 is not compensable either. Confirming that the complaint was filed, reviewing the docket, and tickling for "service and answer check" are clerical tasks. Informing the client that his IFP application was granted is a compensable activity, but having been lumped together with clerical tasks in a block-billing entry, there is no way to determine how long that task took, and presumably it should not have taken long.

1   The 0.2 billed on March 12, 2018 for checking the docket and tickling again is likewise clerical and not compensable.

Subtracting 2.9 hours of non-compensable time, Counsel spent 35.7 hours on this case. Moreover, Counsel reduced the time he considered compensable to 35 hours for the EAJA motion he submitted, so it seems appropriate to use the same number of hours for the 406(b) motion.

An award of $38,792.00 in § 406(b) fees, arising from a case in which 35 hours of compensable time was expended, equates to a *de facto* hourly rate of $1,108.34 per hour. The Court finds that the benefits are "large in comparison to the amount of time counsel spent on the case" and "a downward adjustment" is "in order." *Gisbrecht*, 535 U.S. 789, 808. Counsel asserts that the Court "should recognize the considerable risk counsel took in agreeing to represent this claimant on a contingency basis in federal court" (Doc. 26 at 4 ¶ 10), but Counsel does not elaborate on any factors that make this specific case a particularly risky one, compared to the general risk that always adheres to representation on a contingency basis, and the Court cannot independently perceive any. Nor were the factual and legal issues particularly complex. Counsel has not met his "burden of establishing that the fee sought is reasonable." *Crawford*, 586 F.3d at 1148.

Having determined that there is no unusual complexity or risk involved in this case, and keeping in mind that "reasonable contingency fees generally should exceed a reasonable lodestar," *Biggerstaff v. Saul*, 840 F. App'x 69, 71 (9th Cir. 2020), the Court is now tasked with determining how great a reduction from the contingency award of $38,792.00 is appropriate.

The Court must make this determination as an exercise of discretion, and courts have reached widely disparate conclusions as to the reasonable *de facto* rate in a case where there is no special complexity or higher-than-usual risk. For example, in a case involving "a complex application for Social Security benefits" in which the district court acknowledged that "counsel undertook some risk in agreeing to represent this plaintiff on a contingency basis, and successfully represented his client in a case that was disputed by

defendant and required skill and expertise," the court determined that an award of $30,623.75 was "not in proportion to" the 51.5 hours the attorney spent on the case. *Carlson v. Astrue*, 2010 WL 2813427, *4 (D. Or. 2010. The district court reduced the award to $24,499, or 20% of the past-due benefits—a reduction of the *de facto* hourly rate from $594.64 per hour to $475.71 per hour. *Id.* The Ninth Circuit affirmed, holding that "[t]he district court did not abuse its discretion by reducing the fees from the amount specified in the fee agreement based on the court's assessment of what was reasonable given the risk and complexity involved in this case." *Carlson v. Comm'r of Soc. Sec. Admin.*, 467 F. App'x 591, 592 (9th Cir. 2012).[2]

In contrast, in *Biggerstaff*, the Ninth Circuit affirmed a district court's decision to reduce the contracted contingency fee of $65,109 to $32,760—nearly a 50% reduction—which, even after the sharp reduction, amounted to a de facto rate of $1,400 per hour. 840 F. App'x at 69-71. The district court noted that there was "no evidence that the underlying issues in the action were complex or novel" and that plaintiff's counsel had "not shown that, at the time counsel first was retained, the likelihood of securing benefits for plaintiff was highly unlikely, highly likely, or somewhere in between"—but nevertheless, counsel sought an award that was "approximately 3.79 times" the high end of the "median hourly attorney rate for consumer law attorneys in California in 2015 and 2016." *Biggerstaff v. Saul*, 2019 WL 4138015, *4 (C.D. Cal. 2019). The district court concluded that "[a]lthough a reasonable contingent fee recovery generally should well exceed a reasonable

---

[2] The Ninth Circuit's affirmance of a reduced award that amounts to a *de facto* hourly rate of $475.71 per hour demonstrates that the higher awards ordered in *Crawford* do not establish a floor for what is reasonable in every case. *Contra Matthews v. Astrue*, 2013 WL 4502216, *1 (D. Ariz. 2013) ("The court is concerned by the size of the award in relation to the number of hours spent [resulting an effective hourly rate of $713.34]. The Ninth Circuit, however, has approved effective hourly rates of $519, $875, and $902 without finding that they are unreasonable."). The determination of whether an award is reasonable remains case-specific. Although the Ninth Circuit instructed the district court to award fees without reduction at a *de facto* hourly rate of "$519 in *Washington,* $875 in *Crawford,* and $902 in *Trejo*," it did not discuss the level of complexity or risk in each of these cases. *Crawford*, 586 F.3d at 1153 (Clifton, J., dissenting). Without that information, the bare amount of these awards is of limited use. *Crawford,* 586 F.3d at 1152-53 (majority opinion) (explaining that courts should assess "the complexity and risk involved in the specific case at issue," rather than social security cases in general, when analyzing the reasonableness of the requested fees).

- 6 -

lodestar, the extraordinary disparity here between what is reported for consumer law attorneys and counsel's request weakens counsel's argument that the requested fee would be reasonable." *Id.*[3] On appeal, the Ninth Circuit held that "[c]onsidering the district court is accustomed to making reasonableness determinations . . . and its assessments qualify for highly respectful review," the amount of fees awarded was not error. *Id.* at 71.

This Court routinely approves, without any reduction for reasonableness, fee applications where the amount requested is in a more typical range—for a case of ordinary complexity and risk, an award between $9,500 and $17,000 is quite common and usually amounts to a *de facto* hourly rate between $350 to $410. *See, e.g.*, *Vega v. Commissioner of Social Security Administration*, 2:18-cv-01552-DWL ($13,493.25 award, 36.5 hours billed, $369.68 *de facto* hourly rate); *Bello v. Commissioner of Social Security Administration*, 2:18-cv-01620-DWL ($16,776.50 award, 41.7 hours billed, $402.31 *de facto* hourly rate); *Cox v. Commissioner of Social Security Administration*, 3:18-cv-08335-DWL ($9,528.40 award, 23.2 hours billed, $410.71 *de facto* hourly rate); *Eastes v. Commissioner of Social Security Administration*, 2:18-cv-00013-DWL ($13,394.75 award, 35.5 hours billed, $377.00 *de facto* hourly rate); *Sharp v. Commissioner of Social Security Administration*, $14,816.40 award, 40.7 hours billed, $364.04 *de facto* hourly rate). This bears mentioning because it at least establishes a baseline—albeit not a ceiling—for what can easily be determined to be reasonable in a case of average complexity and risk.[4]

The only distinguishing factor in the case at hand is the amount of past-due benefits.

---

[3] The district court "acknowledge[d] the regrettable imprecision of the analysis," *Biggerstaff*, 2019 WL 4138015 at *4, and quoted Justice Scalia's dissenting opinion in *Gisbrecht*, which criticized the majority opinion for doing "nothing whatever to subject these fees to anything approximating a uniform rule of law" and for "trying to combine the incompatible"—that is, for "tell[ing] the judge to commence his analysis with the contingent-fee agreement, but then to adjust the figure . . . on the basis of factors [including the proportion of time spent to the size of the award]," which is "the precise antithesis of the contingent-fee agreement." *Gisbrecht*, 535 U.S. at 809 (Scalia, J., dissenting).

[4] Up until this case, the only outlier (a § 406(b) request that hasn't fit into this typical range) presented to this Court involved a higher award but also a higher number of attorney hours billed, such that the de facto hourly rate was somewhat higher, but not astronomically so. *Sallee v. Commissioner of Social Security Administration*, 2:17-cv-04504-DWL ($27,361.50 award, 50.8 hours billed, $538.62 de facto hourly rate).

In terms of the level of complexity, the number of hours worked, and the experience of the attorney, some of these cases are indistinguishable. In *Eastes*, a case of similar complexity, the attorney, who had "practiced law for approximately 30 years, the last twenty plus of which [have] been devoted almost exclusively to disability law," argued that a *de facto* hourly rate of $377.00 was reasonable ($13,394.75 for 35.5 hours of work), and the Court agreed. (2:18-cv-00013-DWL, Doc. 34-1 at 16.) In *Sharp*, another case of similar complexity, the attorney, who had "practiced law in this state for over 40 years," "all but the first two years" of which were "devoted almost exclusively to Social Security disability law," argued that a *de facto* hourly rate of $364.04 was reasonable ($14,816.40 for 40.7 hours of work), and the Court agreed. (3:17-cv-08133-DWL, Doc. 26 at 6.) The Court finds that those cases are in line with this one, in the approximate complexity and risk level of the cases, the approximate experience level of the attorneys,[5] and the approximate amount of attorney time spent. Nevertheless, as noted above, the typical range should not function as a ceiling.

"[T]he prevailing non-contingent rate in the Phoenix market is $250.00 per hour," and courts in the District of Arizona have reduced § 406(b) fee awards to an amount approximately three times higher than this rate, a de facto rate of $750 or thereabout. *Kellogg v. Astrue*, 2013 WL 5236638, *2 (D. Ariz. 2013); *see also Snyder v. Berryhill*, 2018 WL 905143, *2 (D. Ariz. 2018) ("Any greater award [than $750 per hour] would result in an improper windfall to [p]laintiff's counsel contrary to *Gisbrecht*."); *Loveless v. Astrue*, 2012 WL 1190823, *1-2 (D. Ariz. 2012) ("Plaintiff's counsel has provided records indicating that he spent 29.7 hours on plaintiff's case. His requested award of $31,000 therefore represents an hourly rate of $1,043.77. The court concludes that such an award is excessive and therefore unreasonable. . . . The court concludes that an award of $20,000 is appropriate. Although $20,000 represents a high hourly rate—almost $700—it accounts

---

[5] Counsel has "nearly 25 years of experience" (Doc. 26 at 4 ¶ 11), which is significantly less than the "approximately 30 years" and "over 40 years" of experience of the attorneys who litigated *Eastes* and *Sharp*, but the Court regards all three attorneys as highly seasoned.

for the risk that plaintiff's counsel took, counsel's experience in the field, and the favorable disposition of plaintiff's claim.").

Counsel, a Philadelphia attorney, did not provide information regarding the prevailing non-contingent rate in Philadelphia or cite to cases establishing what is typically regarded reasonable for attorneys in the Philadelphia market.[6] The Community Legal Services ("CLS") of Philadelphia has "articulated reasonable hourly rates," which courts have used when considering fees for Philadelphia attorneys. *Americans for Prosperity v. Grewal*, 2021 WL 1153194, *14 (D.N.J. 2021). The CLS rate for attorneys with 21-25 years' experience is $550-640. Counsel's non-contingent hourly rate of $595.00 (Doc. 26 at 4 ¶ 11) falls within this range. The Social Security Administration in Philadelphia has "acknowledg[ed] that up to $600 per hour would not be unreasonable" for a § 406(b) fee award. *Perez v. Barnhart*, 2006 WL 781899, *2 (E.D. Pa. 2006); *see also Shackles v. Barnhart*, 2006 WL 680960, *2 (E.D. Pa. 2006) (concluding that de facto hourly rate of $1,120.50 "would constitute a windfall" and reducing the § 406(b) fee to an amount that equated to a de facto hourly rate of $664.92).

The Court will reduce the award to $26,825.00, which the Court considers to be the high end of what could reasonably be awarded in a case of this level of risk and complexity. This equates to a *de facto* hourly rate of $766.43 per hour, which still greatly exceeds Counsel's non-contingent hourly rate of $595.00. (Doc. 26 at 4 ¶ 11.) This rate is far above the amount a Phoenix attorney typically gains for a case similar to this one—whether the award is based on a contingency fee or not—and it aligns with the amount other judges in this district have found to be at the high end of reasonable for a case of ordinary complexity. *Kellogg*, 2013 WL 5236638 at *2; *Snyder*, 2018 WL 905143 at *2; *Loveless*, 2012 WL 1190823 at *1–2; *Matthews*, 2013 WL 4502216 at *1.

Accordingly,

---

[6] The Laffey Matrix, "which provides the billing rates for attorneys in the Washington D.C. market with various degrees of experience," "is not relevant outside of the Washington D.C. area." *Americans for Prosperity v. Grewal*, 2021 WL 1153194, *14 (D.N.J. 2021).

**IT IS ORDERED** that attorneys' fees under 42 U.S.C. § 406(b) are awarded in the amount of $26,825.00.

**IT IS FURTHER ORDERED** that Plaintiff's counsel must refund the lesser of the EAJA fee award and the § 406(b) fee award to Plaintiff.

Dated this 24th day of September, 2021.

Dominic W. Lanza
United States District Judge